IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CECILIA VILLARRUEL,

               Plaintiff,

      v.

ALBERTO GONZALES, Attorney
General, Unites States
Department of Justice,

               Defendant.

Case No. 06 C 766

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I.  BACKGROUND

Cecilia Villarruel (hereinafter, "Villarruel"), who identifies herself as Hispanic, held the position of "Office Assistant" in the Merrillville, Indiana, office of the Drug Enforcement Administration (the "DEA") from 1992 to 2001.  Her duties included providing information and assistance in report writing, serving as a liaison with other law enforcement agencies, relaying information to agents, as well as several other duties.  She had some limited procurement and contracting experience and had attended two four-day courses entitled "Ethics in Procurement" and "Introduction to Contracting and the Federal Acquisition Process" in April 1992.

In August 2001, Villarruel accepted the position of "Supply Technician" in the Chicago Field division.  Her immediate supervisor was Linda Gonzalez (hereinafter, "Gonzalez"), who was

Assistant Administrative Officer.  In turn Gonzalez' superior was John Biagioni (hereinafter, "Biagioni") who was the Administrative Officer for the Chicago Field Office.  Gonzalez and Biagioni are listed as Caucasian although Gonzalez, as her name implies, is married to a Hispanic.  The duties of a supply technician included providing furniture and equipment assignments, managing DEA property through the inventory management system, as well as various reporting and planning duties relative to her primary responsibilities.  Gonzalez completed and Biagioni reviewed Villarruel's annual performance reviews.  Gonzalez rated her as "acceptable" on a scale ranging from "outstanding," "significantly exceeds expectations," "acceptable," and "unacceptable," on all reviews through 2004.  An "Acceptable" rating did not impact Villarruel's pay, duties, responsibilities, or job title.

According to notes, memos, and e-mails prepared by Gonzalez, Villarruel's performance deficiencies included:  (1) inability to complete assignments on a timely basis; (2) placing wrong information on inventory forms leading to missing equipment; (3) failure to respond to inquires and requests in a timely manner; and (4) failure to obtain government credit and phone cards for new DEA employees.

In October 2003, Villarruel responded to a vacancy announcement for an "Administrative Support Specialist" position in the Chicago Field division's administrative support unit.  The

primary function of this position was to serve as the Contracting Officer's Technical Representative for a $9.5 million contract to employ foreign language translators for wiretap. Biagioni drafted the position description, duties, and responsibilities. The position description stated that the holder of the position was required to have comprehensive and detailed knowledge of procurement and contracting because the job required management of the translation contract to ensure that the correct number of translators was on every shift, to supervise those translators, to manage the budget allocation and expenses in relation to the contract, and to maintain an adequate amount of obligated funds to cover translation work.

Four women including Villarruel and Anita Mrock (a Caucasian) ("Mrock") were placed on the "best qualified list" ("BQL") by personnel specialists at DEA headquarters. To be on this list an applicant must meet the minimum qualifications for the position. The applicants are then rated according to the required knowledge, skills, and abilities, known as KSAs. The selecting officer is free to select the individual believed to be the most qualified for the position whose names were on the BQL.

Villarruel's application contained numerous spelling errors as well as errors in grammar. Mrock's application noted that she was employed by DEA from 1973 through February 1991 when she resigned due to the fact that her husband was transferred out of Chicago.

She returned to the Chicago area and the DEA in 2002 when she was hired as an "Administrative Technician" in the Chicago division and came under the supervision of Gonzalez and Biagioni. She was a certified contracting officer and carried out division-wide procurement and supply management in her new position. She was rated as "outstanding" by Gonzalez on her annual performance reviews.

The interview panel that made the selection of Administrative Support Specialist consisted of Biagioni, Gonzalez and Special Agent Eva Sala, who was added to the panel because she had been performing the duties of an administrative support specialist on a temporary basis. The panel reviewed the applications and interviewed the candidates and unanimously recommended Anita Mrock to the selecting official, Special Agent In-Charge ("SAC"), Richard Sanders. The panel's decision to select Mrock over Villarruel was allegedly based on the belief that Mrock was more qualified and its perception that Villarruel had performance problems when she worked in the Merrillville office.

On November 18, 2003 Villarruel initiated a race discrimination complaint with the DEA's Equal Employment Opportunity ("EEO") Office (Case No. D-04-3755) over the failure to select her for the Administrative Support Specialist position. In March 2005 the Department of Justice's Complaint Adjudication Office issued its final agency decision finding no discrimination.

Although Villarruel filed an appeal, she did not wait for a decision but instead commenced this lawsuit. While this suit was pending, the Office of Federal Operations issued a decision finding in favor of Villarruel. A Motion to Vacate based on this pending case has not as yet been decided.

After her non-selection and during her midterm 2004 evaluation, Villarruel allegedly became hostile and loud toward Gonzalez and questioned her authority to critique her backlogged work. On July 28, 2004 Villarruel, Biagioni and Gonzalez met to discuss her midterm evaluation and her alleged backlogged work. Biagioni told Villarruel that if she did not complete her work on a timely basis he would consider placing her on a Performance Improvement Plan ("PIP"). However, this never came to pass.

In September 2004, the DEA's Laredo, Texas District Office announced two vacancies for secretarial positions. Villarruel did not file a formal application for the Laredo vacancies and was therefore not placed on the BQL. In the same month Villarruel requested SAC Sanders to transfer her to the San Antonio District Office so she could be near her ailing elderly mother. She was advised, however, that she did not qualify for the DEA's voluntary or hardship transfer programs. On September 30, Villarruel sent a memo asking for assistance in transferring to the Laredo District Office. The Special Agent in Charge in the Laredo District, James Craig, asked his subordinate, Thomas Hinojosa ("Hinojosa"), a

Hispanic, to consider hiring Villarruel out of consideration of her brother, Ralph Villarruel, who was a supervisory agent with the DEA. He did not, however, order Hinojosa to hire her. Hinojosa subsequently did not hire her because, he says, he wanted an individual who wanted to be in Laredo and Villarruel had said that she wanted the job to be near her mother in San Antonio. He was also afraid that, due to her familial circumstances, she would be requesting absences. Villarruel contends that she was led to believe that she had been offered the position and had sent Hinojosa an e-mail accepting the position. Hinojosa was displeased by this e-mail because he felt that Villarruel was accepting a position that had not been offered to her. The two positions in Laredo were given to two Hispanic women instead. Biagioni had declined to discuss Villarruel with Hinojosa because, as he told him, she was involved in a discrimination complaint. He instead suggested that Hinojosa contact Villarruel's former supervisor, Michael Flanagan.

On November 4, 2004, Villarruel filed a second formal EEO complaint (Case No. D-05-3789) raising race and retaliation claims concerning (1) Gonzalez' comments at Villarruel's July 2004 midyear evaluation; (2) Biagioni's suggestion during the July 28, 2004 meeting that he would consider placing Villarruel on a PIP if she did not resolve her work backlog; and (3) her failure to receive the position at the DEA's Laredo, Texas office. On January 25,

2006, the Department's Complaint Adjudication Office issued its final decision in Case No. D-05-3789 finding that Villarruel had not been discriminated against or harassed because of her race or in retaliation for initiating her first EEO case. There apparently was no appeal taken from this agency decision.

Based on the foregoing Villarruel has filed a three-count complaint under Title VII alleging racial harassment, retaliation, and racial discrimination for failure to promote and to transfer. The Department of Justice has moved for Summary Judgment.

## II.  DISCUSSION

### A.  Failure to Promote

The position of the department is essentially two fold: first, it has clearly established by the agreed Statement of Undisputed Facts that the decision to promote Mrock over Villarruel was due to the former's superior qualifications, and was, therefore, appropriate and lawful; and second, Villarruel's attempt to qualify admissions to and her denials of the Department's Statement of Undisputed Facts was impermissible and therefore could not create a dispute as to the essential facts. Villarruel in many instances went line by line through many of the Department's statements admitting some sentences and denying others. The Court does not see anything inherently wrong with this because many of the Department's statements are multi-sentence. However, in most instances Villarruel relies on her own affidavit in support of her

denials. Her "affidavit" was truth merely a certificate stating that the facts stated in her response to the Department's statement and the facts alleged in her statement of additional facts are true. She states that she knows them to be true from "her own personal knowledge and experiences." She does not specify in her affidavit anything specific. Thus, as has been held by the Seventh Circuit, a flat denial without specific reference to supporting materials is to be discounted. *Valenti v. Qualex, Inc.*, 970 F.2d 363, 367-369 (7th Cir. 1992)

Villarruel did, however, attach affidavits of five co-workers which had been prepared by and given to the EEO Contract Investigator for the DEA while investigating Villarruel's initial complaint regarding the failure to promote her to the Administrative Support position.

The first affidavit was of Marsha Allen, an African-American, who worked with Villarruel and was supervised by Gonzalez and Biagioni. Although she did not have much information to give as to either Mrock's or Villarruel's qualifications, she did opine that "[she was] sure that; being Hispanic factored in some way into [Villarruel]'s non selection." She said that Gonzalez and "picked on" a Hispanic Stay-in-School student and "seemed to have problems with people with college degrees. She also believed that Gonzalez and Mrock were friends.

The second affidavit was from Dorothy Currie, also an African-American, who likewise had Gonzalez and Biagioni for supervisors. She opined that Villarruel "may have been discriminated against." She apparently came to this conclusion because to Currie other Hispanics "seemed" to have been treated unfairly by Gonzalez.

The third affidavit was from Gabriella Robles who worked for a DEA contractor but did not report to anyone with the DEA. She herself was Hispanic and was a friend of Villarruel. She opined that Gonzalez "seemed to be bothered that [Villarruel] and I sometimes conversed in Spanish." She concluded this because she overheard Gonzalez say that "people who are in America should speak English." She stated that she did not know enough to offer an opinion whether Villarruel's non-selection was due to discrimination.

The fourth affidavit was from Betty Ann Koblich who was a Personnel Representative in the Administrative Service Support Unit and was supervised by Biagioni (but not Gonzalez). She was involved in the selection process which resulted in the selection of Mrock. Although she was not part of the interview process, she did set up the interviews. She did not know why Villarruel was not selected and had heard nothing which would lead to believe that race was a factor in the selection.

The fifth and final affidavit was from Michael Flanagan who was Villarruel's direct supervisor for two years when he was the

Resident Agent in Merrillville DEA office. He was very complementary of Villarruel' skill as an office administrative support specialist. He however at the time of her non-selection was stationed in Florida and had no opinion as to whether she was discriminated against. He did state that nonpayment of bills was a problem at the Merrillville office but did not believe that it was Villarruel's fault.

Based on the above the Department contends that any conclusion that Villarruel's non-selection was based on discrimination would be based on wholesale speculation both as to comparison of the qualifications of Villarruel and Mrock as well as any conclusion that animus by Gonzalez toward Hispanics played any role. Villarruel, in one of the shortest briefs on record, merely states that since Villarruel met three of the four requirements for a *prima facie* case, and the forth was partially met, *i.e.*, the selected person was outside of the protected class, that [t]he reason Villarruel was not selected is most likely discriminatory and the reason presented by the DEA for Villarruel's non-selection was pretextual."

Therefore since Villarruel has not put any flesh on her argument she apparently is leaving this to the court. Although the court need not do so (*330 West Hubbard Restaurant Corp. v. U.S.*, 203 F.3d 990, 997 (7th Cir. 2000)), the evidence submitted in the affidavits does not in any concrete way allow the Court to make a

comparison between the qualification of Mrock and Villarruel that would be favorable to the latter. The only concrete items allegedly favoring Villarruel are that she spoke Spanish and had a college degree. There was no other evidence submitted that countered the Department's evidence that neither of these factors was necessary to the position. The only other basis put forth in the affidavits (but not in Villarruel's brief) is the perception by two of the affiants that Gonzalez (but not Biagioni and the third member of the selection panel, Special Agent Sala, had something against Hispanics, even though she was married to a Hispanic. Even this evidence was based on perceptions of treatment extended to others and not to plaintiff herself. Such "evidence" is of questionable admissibility under Rule 404(b). The only other "evidence" was the alleged statement that people in the United States should speak English. This is hardly a controversial comment and there is nothing to indicate the context of which the comment was made. Thus, the evidence is clearly insufficient to raise an issue of fact as to pretext.

The Department is therefore entitled to summary judgment on the Title VII failure to promote claim.

### B. The Failure to Transfer Claim

The only support submitted by Villarruel for her claim of discrimination based on failure to transfer to the Laredo, Texas office of the DEA, was her own bare bones' affidavit and the

deposition transcript of Raquenel Ibarra ("Ibarra"), Assistant Administrative officer. Her duties which did include hiring and firing including taking care of the paper work that goes with promotions. She testified that she spoke with Villarruel at a time very close to the closing date for applications. Ibarra later found out when she examined the BQL that Villarruel had not formally applied. Villarruel had had someone (it turned out that it was the Chicago SAC) intercede with the Houston Office on her behalf seeking to obtain her transfer. In any event, Ibarra was asked to get the paperwork in order for the transfer. To be considered for the transfer, Hinojosa, the head of the Laredo office, required a memo from Villarruel to explain the reasons why Villarruel wanted to transfer to the Laredo office. Villarruel was late in sending the memo and when she did the contents upset Hinojosa because she made it seem that the decision had already been made to transfer her. According to Ibarra the reason given by Hinojosa for not selecting Villarruel was because she was seeking the transfer to be closer to her sick mother in San Antonio and it was his belief that she would be asking for too much sick leave which the office couldn't afford. Hinojosa was Hispanic as were the two people selected for the position sought by Villarruel, so she cannot show that similarly situated persons of non-protected status were treated more favorably.

Villarruel in a one paragraph portion of her brief states that the failure to transfer was retaliatory because there was evidence that Hinojosa was aware of her EEO complaint. According to Biagioni, he told Hinojosa that he could not discuss Villarruel with him because of the pendency of her complaint. There is no evidence that he did in fact discuss the complaint in any detail. Biagioni denies that he did so. Instead of discussing her case he directed Hinojosa to contact Michael Flanagan, Villarruel's former supervisor who had only superlatives to offer. Thus, it is mere speculation to suggest that Hinojosa denied the transfer in retaliation for Villarruel's EEO complaint rather than his stated reason. Summary Judgment is granted on the retaliation claim related to the failure to transfer.

### C. The Harassment and Discrimination Claims

Villarruel's harassment and discrimination claims are described in her brief as follows: "Linda Gonzalez behaved in a discriminatory and harassing manner towards Villarruel and other Hispanic DEA employees under her supervision and in her work area, creating an overall hostile working environment for Villarruel. As a result, she received lower performance rating, which inhibited her ability to be promoted." The only description of her specific complaints is found in her EEO complaint. There she complained about Biagioni's suggestion that if her performance didn't improve he would consider placing her on a PIP, and her July midterm

evaluation of "acceptable" by Gonzalez.  The law is clear that absent "material harm" actions are not adverse.  *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531 (7th Cir. 2004).  She was not placed on PIP and her job rating did not have any tangible, negative effect.  Thus, in the absence of material harm, her claims are foreclosed.  Summary judgment is granted on the remaining harassment and discrimination claims.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Motion of the Department for Summary Judgment is granted as to all three counts of Villarruel's Complaint.

**IT IS SO ORDERED.**

_____
         Harry D. Leinenweber, Judge
         United States District Court

**DATE:** June 27, 2007